# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| MARCUS HAMPTON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. ) ) |
| KENNY PIPE & SUPPLY, INC., | ) ) |
| Defendant. | |

## COMPLAINT

### I. JURISDICTION

1. This is a suit instituted pursuant to the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et seq.,* and the Emergency Paid Sick Leave Act ("EPSLA"), Pub. L. 116-127, §5102 *et seq.*, as incorporated into the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. Jurisdiction of this Court exists pursuant to 28 U.S.C. §1331 and 1343(4) and 29 U.S.C. §§216(b) and 217.

2. Plaintiff Marcus Hampton ("Plaintiff") timely filed his charge of discrimination against defendant Kenny Pipe & Supply, Inc. ("Defendant") with the Equal Employment Opportunity Commission within 180 days after the last act of discriminatory treatment. Plaintiff has further filed this complaint within 90 days after receipt of his right-to-sue letter.

## II. PARTIES

3. Plaintiff is a citizen over the age of nineteen and a resident of Madison County, Alabama.

4. Defendant is a corporation headquartered in Nashville, Tennessee.

## III. FACTS

5. In or about May of 2020, Plaintiff became employed by Defendant as a delivery driver at its facility in Huntsville, Alabama.

6. On or about July 14, 2020, Plaintiff became sick and developed a fever.

7. On that date, Plaintiff notified his supervisor, Wesley McClurg, that he was going to get tested for COVID-19 the next morning.

8. McClurg said OK.

9. When he was tested, Plaintiff was told he had to quarantine until he got the results.

10. Plaintiff called McClurg and told him, and McClurg told Plaintiff to continue working.

11. Plaintiff did that.

12. On or about Friday, July 17, 2020, Plaintiff was at work and got a phone call from the hospital advising that he had tested positive for COVID-19.

13. Plaintiff was told to quarantine for 14 days from the date of his test.

14. The state health department called Plaintiff after that and told him the same thing.

15. Plaintiff then told McClurg on this same date that he had tested positive and had to quarantine for 14 days.

16. McClurg told Plaintiff to go home.

17. Over that weekend, Plaintiff felt fluish and dehydrated.

18. On or about Monday, July 20, 2020, McClurg texted Plaintiff and said he needed something in writing saying that Plaintiff had to self quarantine to get covered for his absences.

19. Plaintiff checked with the state and was advised that they had to mail it to him.

20. Plaintiff told McClurg about this and that he would send it to McClurg as soon as he received it.

21. On or about July 23, 2020, Plaintiff received a letter from the state advising that he had to quarantine until he was fever free and with improved symptoms for three days, at least until July 25.

22. Plaintiff texted a photo of the letter to McClurg.

23. On or about July 24 or 25, McClurg called Plaintiff and asked when he would be able to come back to work.

24. At the time, Plaintiff was still too sick to work and had no sense of smell or taste.

25. Plaintiff told McClurg about his condition and, in accordance with the directive he had received from the state that he be fever free and with improved symptoms for three days, that he did not know.

26. On or about July 26, 2020, Plaintiff again talked to McClurg.

27. McClurg asked Plaintiff if he was coming in the next day.

28. Plaintiff still felt too sick to work and still had no sense of smell or taste.

29. Plaintiff told McClurg about his condition and that he did not know if he would be able to return the next day but would see.

30. On or about the morning of July 27, 2020, Plaintiff was still sick and had taken some medicine to help him sleep.

31. On this date, McClurg called Plaintiff around 7:00 a.m. and Plaintiff was asleep.

32. When he woke up later that morning, Plaintiff called McClurg back and got no answer.

33. On or about July 28, 2020, McClurg called Plaintiff and told him that he was terminated for not having come in to work on the 27th.

34. Plaintiff told McClurg that he had told him on the 26th that he was still sick and did not know if he would feel well enough to come in on the 27th.

35. On or about July 31, 2020, Plaintiff received a letter from Defendant stating that he had been terminated for being a no-call, no show.

36. This was false.

37. Defendant paid Plaintiff for sick leave as a result of his COVID-19 quarantine from July 21 through July 24, 2020.

## COUNT I

## ADA

38. Paragraphs 1-37 are incorporated herein.

39. Defendant was a covered employer under the ADA at all times relevant to this case.

40. Plaintiff's COVID-19 constituted a physical impairment under the ADA during the events of this case.

41. Due to this impairment, Plaintiff was substantially limited with respect to the major life activities of the operation of his immune and olfactory systems, as well as concentrating, thinking, smelling, tasting, and working.

42. Plaintiff was disabled under the ADA during the events of this case.

43. Further, Defendant perceived Plaintiff as disabled under the ADA during the events of this case.

44. Plaintiff was and is a qualified individual able to perform the essential functions of his position.

45. Plaintiff's request that he be excused for absences caused by his disability was a request for a reasonable accommodation under the ADA.

46. Defendant violated Plaintiff's rights under the ADA by terminating him (a) because of his disability, actual or perceived, (b) as a result of its failure to reasonably accommodate that disability in allowing him to take off work for it, and/or (c) in retaliation for his request for an accommodation for that disability in taking off work because of it.

47. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADA;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing him into the position he would have occupied in the absence of discrimination (or, alternatively, providing front-pay), providing back-pay and lost benefits, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(v) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT II

## EPSLA / FLSA

48. Paragraphs 1-37 are incorporated by reference.

49. During the events of this case, Defendant was a covered employer under §5104 of the EPSLA and §15(a)(3) of the FLSA, 29 U.S.C. §215(a)(3).

50. During the events of this case, Plaintiff was a covered employee under §5104 of the EPSLA and §15(a)(3) of the FLSA, 29 U.S.C. §215(a)(3).

51. As set forth above, Plaintiff gave Defendant notice that his absences referenced above were due to his being quarantined for COVID-19.

52. Plaintiff's request for time off from work due to his being quarantined for COVID-19 constituted protected activity under the EPSLA.

53. Defendant terminated Plaintiff's employment because of his taking paid sick leave for his COVID-19 quarantine as covered by the EPSLA.

54. Defendant's termination of Plaintiff violated his rights under §5104 of the EPSLA and §15(a)(3) of the FLSA, 29 U.S.C. §215(a)(3).

55. In doing so, Defendant willfully violated the EPSLA and FLSA.

56. As a result of Defendant's action, Plaintiff has suffered lost wages and benefits and emotional distress.

**WHEREFORE, these premises considered**, Plaintiff requests the following:

(i) That the Court enter an Order declaring that Defendant's acts as described herein violated the EPSLA and FLSA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from further violating the EPSLA and FLSA;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole reinstating Plaintiff and placing him into the position he would have occupied in the absence of retaliation (or, alternatively, providing front-pay), providing back-pay and lost benefits, and ordering Defendant to pay compensatory and liquidated damages as a jury may assess;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences resulting from a judgment in his favor; and

(v) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

> Respectfully submitted,
> s/ Adam M. Porter
> Adam M. Porter
> Attorney for Plaintiff
> Adam M. Porter, LLC
> 2301 Morris Avenue, Suite 102
> Birmingham, Alabama 35203
> Phone: (205) 322-8999
> Facsimile: (205) 402-4619
> Email: adam@adamporterlaw.com

Plaintiff requests trial by struck jury.

> s/ Adam M. Porter
> Attorney for Plaintiff